IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| GIANNI GIBBS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 13 C 9142 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| VILLAGE OF FLOSSMOOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants in part and denies in part Defendants' motion to dismiss [16]. Status hearing set for 5/8/14 is stricken and reset to 4/23/14 at 8:30 a.m.

## STATEMENT

On December 20, 2013, Plaintiff Gianni Gibbs filed the present ten-count Complaint against Defendants Village of Flossmoor and Flossmoor police officers Freeman and Kamleiter alleging constitutional violations, *see* 42 U.S.C. § 1983, and state law claims pursuant to the Court's original and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion to dismiss Counts III, IV, V, VI, VIII, and IX of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion. Specifically, the Court grants Defendants' motion to dismiss Count IX with prejudice. The Court denies the remainder of Defendants' motion.

## LEGAL STANDARD[1]

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

---

[1] Plaintiff sets forth the wrong legal standard for a Rule 12(b)(6) motion to dismiss using verbiage similar to the "no set of facts" language that originated in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In 2007, the United States Supreme Court unequivocally rejected this language when retooling the federal pleading standards. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("after puzzling the profession for 50 years, this famous observation has earned its retirement").

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). "[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," but "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Independent Trust Corp. v. Stewart Info. Serv. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012).

## BACKGROUND

On or about December 18, 2012, at approximately 3:35 p.m., Defendant Freeman stopped Plaintiff Gianni Gibbs (hereinafter "Gianni" or "Plaintiff") for traffic violations. (R. 1, Compl. ¶ 6.) Defendant Kamleiter then arrived in his own squad car to assist Defendant Freeman. (*Id*. ¶ 8.) Thereafter, Plaintiff's mother, Sandra Gibbs (hereinafter "Sandra"), arrived at the scene in a separate car and attempted to ask Defendants about her son's arrest. (*Id*. ¶ 9.) According to Plaintiff, Defendants Freeman and Kamleiter refused to speak to Sandra. (*Id*. ¶ 10.) Fearing for her son's safety, Sandra continued to ask about her son's arrest, which infuriated Defendants. (*Id*.)

Plaintiff alleges that thereafter Defendant Freeman took Gianni to the police station without probable cause to "punish" Sandra. (*Id*. ¶ 11.) More specifically, Defendants placed Gianni in handcuffs and put him in the back of Defendant Freeman's squad car without fastening his seatbelt. (*Id*. ¶ 12.) According to Plaintiff, on the way to the station, Defendant Freeman, who was irritated that Plaintiff questioned him about the mistreatment of his mother, slammed on the brakes unnecessarily with the intent to harm and punish Plaintiff sending him flying into the screen separating the front and rear compartments of the squad car. (*Id*. ¶ 13.)

At the Flossmoor police station parking garage, Defendant Freeman opened the rear passenger door while Defendant Kamleiter stood four feet away near the trunk of Defendant Freeman's squad car. (*Id*. ¶ 15.) Plaintiff alleges that after Defendants required him to get out of the car without assistance, they unreasonably slammed him onto the trunk of the squad car while he was still handcuffed. (*Id*. ¶¶ 15, 16.)

Further, Plaintiff alleges that both Defendants falsely claimed that he resisted arrest and committed a battery on Defendant Freeman. (*Id*. ¶ 17.) In addition, Plaintiff asserts that Defendants Freeman and Kamleiter communicated their false version of the December 18, 2012 incident with malice to prosecutors, which prompted the Cook County States Attorney's Office to charge Gianni with two counts of aggravated battery to a police officer on January 23, 2013.

2

(*Id*. ¶ 18.) A Cook County Circuit Court judge acquitted Gianni of resisting arrest and aggravated battery charges after a bench trial in 2013. (*Id*. ¶ 20).

In his Complaint, Plaintiff brings the following claims: (1) two Fourth Amendment excessive force claims against Defendants Freeman and Kamleiter (Counts I and II); (2) a Fourth Amendment unreasonable seizure claim against Defendants Freeman and Kamleiter (Count III); (3) a claim pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against the Village of Flossmoor (Count IV); (4) a Fourth Amendment false arrest claim against Defendants Freeman and Kamleiter (Count V); (5) a Fourteenth Amendment procedural due process claim against Defendants Freeman and Kamleiter (Count VI); (6) a common law malicious prosecution claim against Defendants Freeman and Kamleiter (Count VII); (7) a Fourteenth Amendment substantive due process claim against Defendants Freeman and Kamleiter (Count VIII); (8) a common law intentional infliction of emotional distress claim against Defendant Freeman (Count IX), and (9) and indemnification claim against the Village of Flossmoor pursuant to 745 ILCS 10/9-102 (Count X).

In Defendants' Rule 12(b)(6) motion, they seek dismissal of the following claims: (1) the Fourth Amendment unreasonable seizure claim as alleged in Count III; (2) the *Monell* claim as alleged in Count IV; (3) the Fourth Amendment false arrest claim in Count V; (4) the Fourteenth Amendment procedural due process claim in Count VI; (5) the Fourteenth Amendment substantive due process claim in Count VIII; and (6) the intentional infliction of emotional distress claim in Count IX.

## ANALYSIS

### I. Counts III and V — Fourth Amendment Claims

First, Defendants argue that the Court should dismiss Plaintiff's Fourth Amendment unreasonable seizure claim as alleged in Count III because it is duplicative of Plaintiff's Fourth Amendment false arrest claim in Count V. More specifically, in Count III, Plaintiff alleges that Defendant Officers unlawfully seized him prior to his arrest. In Count V, Plaintiff contends that Defendant Officers falsely arrested him for resisting arrest and aggravated battery at the police station garage because they lacked probable cause.

In their motion to dismiss, Defendants maintain that because these allegations are based on the same operative facts and injuries, Plaintiff should combine Counts III and V. Despite Defendants' argument, Plaintiff's unreasonable seizure claim in Count III could be construed as a violation of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because Defendants did not arrest Plaintiff until later in the police station garage. Whether Plaintiff's unreasonable seizure claim is successful, however, is an entirely different matter. *See Ford v. Wilson,* 90 F.3d 245, 248 (7th Cir. 1996). Plaintiff's separate claims in Counts III and V are permissible under Rule 8(a), especially because Plaintiff has put Defendants on fair notice of these two Fourth Amendment claims and the separate grounds supporting them. *See Cincinnati*

*Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The Court therefore denies Defendants' motion to dismiss Counts III and V.

Because Defendants do not move to dismiss Plaintiff's excessive force claim as alleged in Count I of the Complaint, the Court need not address Defendants' argument that their failure to fasten Plaintiff's seatbelt "does not appear to be an excessive force claim."

**II.     Count IV — Monell Claim**

In their motion to dismiss, Defendants argue that Plaintiff has not sufficiently alleged his *Monell* claim against Defendant Flossmoor under the federal pleading standards. To establish liability against Defendant Flossmoor, Plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Plaintiff can demonstrate this requirement through: (1) an actual official policy; (2) a practice or custom that, although not officially authorized, is widespread and well-established; or (3) a deliberate act from a Flossmoor employee with final policy-making authority. *See Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012).

Here, Plaintiff alleges that Defendant Officers acted pursuant to one or more of the following interrelated policies, practices, and/or customs of Defendant Village of Flossmoor:

> (a) allowing and encouraging its police personnel to transport handcuffed arrestees without putting seatbelts on them;
>
> (b) failing to train their police personnel to transport handcuffed arrestees only when seatbelted;
>
> (c) failing to provide police personnel with squad or patrol vehicles equipped with seatbelts in the rear passenger compartment;
>
> (d) allowing and encouraging the filing of false reports, and giving false statements and testimony about seizures; and
>
> (e) promoting, advocating and/or allowing the police code of silence, where officers refuse to report, or otherwise cover-up, instances of police misconduct despite their obligations under the law and police regulations. The code of silence also includes police officers remaining silent or giving false and misleading information to protect themselves or fellow officers from internal discipline, civil, or criminal liability.

(Compl. ¶ 33.) In addition, Plaintiff alleges that Defendant Kamleiter, as deputy chief, acted as a policy maker regarding the alleged unconstitutional acts. (*Id.*)

4

Accepting Plaintiff's well-pleaded facts as true, Plaintiff provides "enough details about the subject-matter of the case to present a story that holds together" regarding Defendant Officers' conduct as it relates to a widespread practice or custom. *See Engel v. Buchan,* 710 F.3d 698, 709 (7th Cir. 2013) (citation omitted). In other words, Plaintiff has alleged enough factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Despite Defendants' arguments to the contrary, Plaintiff's factual allegations are not legal conclusions. Instead, with the *Monell* standard in mind, Plaintiff sets forth facts explaining how Flossmoor is plausibly liable for Defendant Officers' alleged misconduct, including a failure to train claim pursuant to *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). At this procedural posture, Plaintiff need not do more. The Court therefore denies Defendants' motion to dismiss Plaintiff's *Monell* claim as alleged in Count IV.

### III. Count VI — Fourteenth Amendment Procedural Due Process Claim

In Count VI of his Complaint, Plaintiff alleges that Defendant Officers violated his Fourteenth Amendment procedural due process rights when they fabricated the story that he harmed them after arresting him for traffic violations and told prosecuting attorney this fabricated story. *See Fields v. Wharrie,* 740 F.3d 1107, 1117 (7th Cir. 2014) ("failing to disclose the false statement's corrupt origins at trial violates [plaintiff's] due-process right to a fair trial under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)"). Similarly, Plaintiff bases his procedural due process claim on the fact that Defendant Officers' testimony at his criminal bench trial was fabricated. *See id.* ("knowingly using perjured testimony to convict [plaintiff] is a more general violation of his due-process right to a fair trial").

Defendants argue that Plaintiff cannot maintain his procedural due process claim because he was acquitted. Indeed, the Seventh Circuit, in dicta, has expressed doubt whether "an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation." *See Carvajal v. Dominguez,* 542 F.3d 561, 570 (7th Cir. 2008). To date, however, the Seventh Circuit has reserved the question of whether an acquitted defendant can bring a *Brady* claim. *See Mosley v. City of Chicago,* 614 F.3d 391, 397-98 (7th Cir. 2010). As such, because the Seventh Circuit has yet to reach this question, Plaintiff may allege an actionable *Brady* claim despite the outcome of his criminal case. The Court therefore denies Defendants' motion as to Count VI.

### IV. Count VIII — Fourteenth Amendment Substantive Due Process Claim

In Count VIII of his Complaint, Plaintiff alleges a substantive due process claim under the Fourteenth Amendment. Substantive due process under the Fourteenth Amendment bars "certain governmental actions regardless of the fairness of the procedures used to implement them." *Wudtke v. Davel,* 128 F.3d 1057, 1062 (7th Cir. 1997) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). "The touchstone of substantive due process is protection of the individual against arbitrary action of government." *Wolff v.*

5

*McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *see also Dunn v. Fairfield Comm. High. Sch.*, 158 F.3d 962, 965 (7th Cir. 1998). Moreover, "the threshold question in any due process challenge is whether a protected property or liberty interest actually exists." *Citizens Health Corp. v. Sebelius,* 725 F.3d 687, 694 (7th Cir. 2013). Fundamental liberty interests include bodily integrity, the right to marry, marital privacy, and the right to have children, to name a few. *See Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

Here, Plaintiff alleges that his substantive due process claim is based on *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). As the *DeShaney* Court explained, the purpose of the due process clause of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 195. Accordingly, "[t]here is no federal constitutional right to be protected by the government against private violence in which the government is not complicit." *Sandage v. Board of Comm'rs of Vanderburgh County,* 548 F.3d 595, 596 (7th Cir. 2008). Specifically, "while there's no federal constitutional duty to protect or to rescue from a peril that the government did not create, there is a duty not to harm." *Id.* at 597 (parenthesis omitted).

In his Complaint, Plaintiff alleges that Defendant Officers' conduct of handcuffing him, which constricted his access to self-help, along with Defendant Officers' failure to seatbelt him into Defendant Freeman's squad car, supports a "state-created danger" theory of liability. Indeed, "[s]tate actors who needlessly create risks of harm violate the due process clause by depriving persons of life, liberty, or property without process." *Paine v. Cason,* 678 F.3d 500, 510 (7th Cir. 2012). Under the circumstances, Plaintiff has sufficiently alleged his substantive due process claim supplying the facts upon which he seeks relief.

Nevertheless, Defendants argue that Plaintiff's claim falls under the Fourth Amendment's protections, and thus the Court must dismiss his substantive due process claim. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (substantive due process clause does not apply when the Constitution "provides an explicit textual source of constitutional protection against a particular sort of government behavior"). Defendants' argument is misplaced because Plaintiff's claim falls squarely within well-established substantive due process jurisprudence pursuant to *DeShaney* and its progeny.

In addition, Defendants argue that Plaintiff has failed to allege that their conduct impinged upon a fundamental liberty interest. Oddly, Defendants cite the seminal United States Supreme Court case discussing the fundamental liberty interest in bodily integrity. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *see also Hart v. Sheahan,* 396 F.3d 8877, 891 (7th Cir. 2005). Finally, Defendants' bare-boned qualified immunity argument fares no better. *See Fluker v. County of Kankakee,* 741 F.3d 787, 795 (7th Cir. 2013) (perfunctory and undeveloped arguments are waived). Defendants may bring a more developed qualified immunity argument later in the proceedings.

6

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's substantive due process claim as alleged in Count VIII of the Complaint.

## V.     Count IX — Intentional Infliction of Emotional Distress Claim

Last, Defendants seek to dismiss Plaintiff's state law intentional infliction of emotional distress ("IIED") as time-barred. Pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act, the limitations period for Plaintiff's IIED claim against Defendant police officers is one year from the time the cause of action accrued. *See* 745 ILCS 10/8–1; *see also Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir. 2006). Under Illinois law, "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013).

Here, Plaintiff alleges that Defendants Freeman and Kamleiter arrested him on December 18, 2012, and he filed the present lawsuit on December 20, 2013. Therefore, Plaintiff's IIED claim is late by one day. *See* Fed.R.Civ.P. 6(a)(1)(A) (courts "exclude the day of the event that triggers the period"). Nevertheless, Plaintiff argues that his IIED claim falls under the continuing violation rule, namely, "the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345, 770 N.E.2d 177, 264 Ill.Dec. 283 (2002). More specifically, Plaintiff contends that the tortious acts did not cease until the individual Defendants falsely testified at his criminal trial sometime in 2013. The Seventh Circuit, however, rejected a similar argument in *Bridewell*. To clarify, the plaintiff in *Bridewell* argued that her claim accrued every day the defendant detectives did not tell the prosecutors to dismiss the criminal indictment because their statements were unreliable. *See id.* at 678. In rejecting this argument, the Seventh Circuit reasoned "[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law — or in federal law either." *Id.*; *see also United States v. Midwest Generation, LLC,* 720 F.3d 644, 648 (7th Cir. 2013) ("enduring consequences of acts that precede the statute of limitations are not independently wrongful"). The Court similarly rejects Plaintiff's attempt to characterize his IIED claim as a continuing violation and dismisses this claim with prejudice.

**Dated:** April 10, 2014

_____
AMY J. ST. EVE
United States District Court Judge